# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: January 31, 2025

```
* * * * * * * * * * * * * *   *
DOMENICA FOSTER,              *   No. 20-882V
                              *
         Petitioner,          *   Special Master Young
                              *
v.                            *
                              *
SECRETARY OF HEALTH           *
AND HUMAN SERVICES,           *
                              *
         Respondent.          *
* * * * * * * * * * * * * *   *
```

*Bridget C. McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.
*Lara A. Englund*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On June 30, 2023, Domenica Foster ("Petitioner") filed a motion for attorneys' fees and costs, requesting a total of **$28,035.58** for the work of her counsel. Pet'r's Mot. Attorneys' Fees & Costs ("Pet'r's Mot.") at 1–2, ECF No. 36.[2] This amount consists of $20,936.50 in fees and $7,099.08 in costs. *Id.* Pursuant to General Order No. 9, Petitioner did not personally incur any costs. *Id.* at 2. On July 20, 2023, Respondent filed his response to Petitioner's motion. Resp't's Opposition to Pet'r's Mot. ("Resp't's Resp."), ECF No. 38. In his response, Respondent stated his opposition, asserting that "[P]etitioner has failed to establish a reasonable basis for her claim. Therefore, [P]etitioner is not entitled to an award of fee[s] and costs, and the [m]otion should be denied." *Id.* at 1. For the reasons stated below, I find that Petitioner's claim did have a reasonable basis, and she is therefore entitled to fees and costs.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] All citations to Petitioner's motion for attorneys' fees and costs will use the page numbers generated by CM/ECF in ECF No. 36.

## I.     Procedural History

On July 20, 2020, Petitioner filed a petition for compensation pursuant to the National Vaccine Injury Compensation Program. 42 U.S.C. §§ 300aa-1 to -34 (2018). Petitioner alleged that she suffered from a Table Guillain-Barré Syndrome ("GBS") injury and a causation-in-fact peripheral neuropathy injury due to an influenza ("flu") vaccine administered on October 17, 2017. Pet. at 1, ECF No. 1. Along with the petition, Petitioner filed medical records on July 20, 2020. Pet'r's Exs. 1–24, ECF No. 1. Petitioner filed additional medical records on August 18, 2020, and on September 16, 2020. Pet'r's Exs. 25–26, ECF No. 12; Pet'r's Exs. 27–28, ECF No. 16.

On April 2, 2021, Respondent filed his Rule 4(c) report recommending that compensation be denied. Resp't's Report at 1, ECF No. 22. Respondent argued that Petitioner had not successfully presented a Table claim because "[P]etitioner was never diagnosed with GBS and her injury d[id] not meet the Table's Qualifications and Aids to Interpretation ("QAI") for GBS." *Id.* at 7. In addition, Respondent argued the onset of Petitioner's neurological complaints pre-dated her vaccination. *Id.* at 2, 8. Thereafter, I held status conferences to discuss Respondent's Rule 4(c) report, the medical records, and how Petitioner wished to proceed. Min. Entry, docketed Oct. 14, 2021; Min. Entry, docketed Jan. 10, 2022. On March 3, 2022, Petitioner filed an amended petition dropping the Table claim and alleging only that she suffered from polyneuropathy that was caused-in-fact by her October 17, 2017 flu vaccination. Am. Pet. at 1, ECF No. 27.

On July 27, 2022, I ordered Petitioner to file an expert report by September 26, 2022. Scheduling Order, ECF No. 28. On September 22, 2022, Petitioner filed a motion for extension of time stating that her expert "need[ed] additional time to prepare his report." ECF No. 29. I granted Petitioner's motion and ordered her to file her expert report by November 10, 2022. Order, docketed Sept. 23, 2022. On November 10, 2022, Petitioner filed a status report stating that she "w[ould] not be filing an expert report." ECF No. 30. Petitioner noted that "Petitioner's counsel ha[d] discussed with Petitioner the necessity of the above to move forward with her claim." *Id.*

On December 7, 2022, I issued a Show Cause Order. ECF No. 31. I stated that "[u]nder the Vaccine Act, petitioners may not be given a Program award based solely on their claims alone. Rather the petition must be supported by medical records or the opinion of a competent physician." *Id.* at 1 (citing 42 U.S.C. § 300aa-13(a)(1)). I noted that "Petitioner's medical records do not contain a definitive statement of causation made by a treating medical professional, a biological mechanism of causation pursuant to *Althen* prong one, or a logical sequence of cause and effect pursuant to *Althen* prong two." *Id.* I informed Petitioner that failure to respond to my Show Cause Order "w[ould] be interpreted as either an inability to provide supporting documentation for this claim or as a failure to prosecute, and this claim w[ould] be dismissed." *Id.* Petitioner failed to respond to my Show Cause Order, and I issued a decision dismissing her claim on January 30, 2023, for insufficient proof and failure to prosecute. ECF No. 32.

Petitioner filed a motion for attorneys' fees and costs on June 30, 2023. Pet'r's Mot. Petitioner did not discuss the issue of reasonable basis, and it had not been raised previously. Respondent filed his response opposing petitioner's motion on July 20, 2023. Resp't's Resp. , Respondent stated his opposition, asserting that "[P]etitioner has failed to establish a reasonable basis for her claim. Therefore, [P]etitioner is not entitled to an award of fee[s] and costs, and the

2

[m]otion should be denied." *Id.* at 1. Petitioner filed a reply, addressing Respondent's reasonable basis arguments, on August 3, 2023. Pet'r's Reply, ECF No. 40. This matter is now ripe for adjudication.

## II.   Relevant Medical History[3]

Prior to vaccination, Petitioner's medical history was significant for fibromyalgia, Sjorgen's syndrome, lumbar degenerative disc disease, and anxiety. *See generally* Pet'r's Ex. 2. On September 29, 2017, Petitioner saw her primary care physician ("PCP") for complaints of dysuria and intermittent shakiness. *Id.* at 73. She reported the shakiness began one year prior and occurred twice a week. *Id.* Her endocrinologist previously told her the shakiness could be from hypoglycemia. *Id.* Petitioner received the flu vaccine on October 17, 2017. Pet'r's Ex. 1 at 5.

On November 1, 2017, Petitioner presented to Penn Medicine Cardiology for complaints of tingling in her fingers, pressure in her chest, and "[v]aricose veins of bilateral lower extremities with other complications." Pet'r's Ex. 3 at 73.

Two days later, on November 3, 2017, Petitioner presented to Dr. Scott Miller at Virtua Family Medicine Marlton complaining of shakiness and myalgia that began five days prior. Pet'r's Ex. 2 at 26. She noted it could be due to her new intensive training program for a half marathon. *Id.* She also reported similar intermittent symptoms over the last year without a diagnosis. *Id.* Review of symptoms was positive for numbness and weakness. *Id.* at 28.

On November 7, 2017, Petitioner went to the emergency department ("ED") with complaints of bilateral numbness and tingling of bilateral upper and lower extremities that started one month. Pet'r's Ex. 12 at 39. She reported that the symptoms worsened after she received the flu shot two weeks ago. *Id.* at 48. She also reported similar symptoms after receiving a flu shot ten years ago. *Id.*

On November 14, 2017, a VAERS report was filed by Edwin Garcia of the Acme Pharmacy where Petitioner received the flu vaccination. Pet'r's Ex. 1 at 7. It was noted that Petitioner began to experience "full body muscle weakness and tingling nerve sensation" on October 23, 2017. *Id.*

On November 17, 2017, Petitioner saw her neurologist for a history of back pain and paresthesias for eight weeks. Pet'r's Ex. 11 at 10. On November 28, 2017, Petitioner went to Arthritis, Rheumatic, and Back Disease Associates. Pet'r's Ex. 18 at 18. She complained of numbness and tingling without weakness. *Id.*

Petitioner returned to her PCP on December 5, 2017, with complaints of "pins and needles" in the left side of her neck with subjective weakness radiating into her arms. Pet'r's Ex. 2 at 19. She also complained of feeling "weak and tingly." *Id.*

From December 7, 2017, to May 30, 2018, Petitioner was treated at Heartland Rehabilitation Services. *See generally* Pet'r's Ex. 5. Her complaints were muscle weakness and tingling throughout her body seven days after receiving the flu shot in October 2017. *Id.* at 5.

---

[3] Relevant medical history includes records of date of onset of Petitioner's neurological complaints.

Petitioner participated in twenty sessions and stated on March 5, 2018, that her arms felt better for two days, but then she took an antibiotic for her bladder and the symptoms got worse in her arms. *Id.* at 23. Petitioner noted that it was the same antibiotic she was prescribed in October 2017, around the same time as her flu shot. *Id.*

On January 22, 2018, Petitioner presented to a neurosurgeon for neck pain that radiated into her arms and hands that began in August 2017. Pet'r's Ex. 24 at 6. On February 7, 2018, Petitioner returned to Arthritis, Rheumatic, and Back Disease Associates with complaints of "internal tremors" since she received the flu shot. Pet'r's Ex. 18 at 36. On March 13, 2018, Petitioner saw a new neurologist for internal tremors that began seven to ten days after receiving a flu vaccine. Pet'r's Ex. 22 at 7.

On March 27, 2018, Petitioner saw Dr. Erin Ingala, Clinical Assistant Professor of Neurology at Penn Medicine Cherry Hill. Pet'r's Ex. 3 at 123. Dr. Ingala noted that Petitioner began to experience tingling and internal tremors seven to ten days after she received the flu vaccine and began an antibiotic. *Id.* After examination, Dr. Ingala's impression was that Petitioner was presenting with a "small fiber polyneuropathy, like[ly] autoimmune in nature[,] [status-post] flu shot." *Id.* at 125.

On April 10, 2018, Petitioner presented to Dr. Shakeilla Shabazz at Virtua Family Medicine Marlton for a health maintenance examination. Pet'r's Ex. 2 at 11. During the appointment, Petitioner's history of peripheral neuropathy following the flu vaccine was discussed. *Id.* at 12. Petitioner reported that seven to ten days after receiving the flu shot, she noticed numbness in her hands. *Id.* at 13.

A May 9, 2018 letter authored by Dr. Ingala stated that Petitioner was under her care for treatment of polyneuropathy which had developed within two (2) weeks of a flu shot in October 2017. Pet'r's Ex. 3 at 138.

On August 30, 2018, Petitioner presented to Dr. Mary Ann Thenganatt at the University of Pennsylvania's Parkinson's Disease & Movement Disorders Center for evaluation of internal tremor. *Id.* at 186. Petitioner reported that she began to feel tingling throughout her body after she got a flu shot in 2017. *Id.*

On November 19, 2018, Petitioner presented to Dr. Brett McCray at Johns Hopkins Neurology for evaluation of paresthesias in her arms and legs. Pet'r's Ex. 8 at 11. Petitioner reported that within seven days of receiving a flu vaccine and uterine antibiotics in October 2017, she developed "a feeling of internal tremors." *Id.*

### III.    Standards of Review

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). Vaccine Program attorneys are not automatically entitled to a fees award in unsuccessful cases like this one. At a minimum, such a claim must be shown to have: (1) possessed reasonable basis; and (2) have been brought in good

faith. § 15(e)(1); *see, e.g.*, *Chuisano v. Sec'y of Health & Hum. Servs.,* 116 Fed. Cl. 276, 284 (2014). Reasonable basis is an objective inquiry while good faith is a subjective inquiry. *Id.* at 289.

### a.  Good Faith

Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.,* 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied.[4] *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)); *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

### b.  Reasonable Basis Determination

An analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at *6–7. While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano,* 116 Fed. Cl. at 283. The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham ex rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert and clarifying that "the failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion"). Indeed, determining what constitutes "more than a mere scintilla" is a "daunting task." *Cottingham v. Sec'y of Health & Hum. Servs.*, 154 Fed. Cl. 790, 795 (2021). The Federal Circuit has made a determination of law regarding what constitutes "objective" evidence in the context of a reasonable basis analysis. It found that multiple pieces of evidence, perhaps not sufficient alone, when taken together, can amount to more than a mere scintilla. *See id.* at 793–95. Furthermore, the Federal Circuit explained that "[m]edical records can support causation [for reasonable basis] even where the records provide only circumstantial evidence of causation" for entitlement. *Cottingham*, 971 F.3d at 1346.

In another opinion regarding reasonable basis, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence to support reasonable basis. *James-Cornelius v. Sec'y of Health & Hum. Servs.,* 984 F.3d 1374, 1379–81 (Fed. Cir. 2021). The Federal Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis." *Id.* at 1379 (citing *Cottingham*, 971 F.3d at 1346). When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Hum. Servs.,* 138 Fed. Cl. 282, 289 (2018). This approach allows the special master to look at each application

---

[4] Respondent does not contest good faith in this case. Resp't's Resp. at 3 n.1.

for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

Additionally, there may be reasonable basis at the time that a claim is filed, which then dissipates as the claim proceeds. *R.K. v. Sec'y of Health & Hum. Servs.*, 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1376–77 (Fed. Cir. 1994) (holding that "an award of fees and costs was not authorized for work performed on a case after a claim lost its reasonable basis")). If reasonable basis is lost, "[p]etitioners' counsels have an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven." *Cottingham v. Sec'y of Health & Hum. Servs.*, 134 Fed. Cl. 567, 574 (2017) (citing *Perreira*, 33 F.3d at 1376; *Curran v. Sec'y of Health & Hum. Servs.*, 130 Fed. Cl. 1, 6 (2017); *Allicock v. Sec'y of Health & Hum. Servs.*, 128 Fed. Cl. 724, 727 (2016)).

### IV. Reasonable Basis Analysis

Respondent challenged the reasonable basis of Petitioner's claim from the time it was filed through her application for fees, and asserted that attorneys' fees and costs should not be awarded. He argued that "Petitioner did not file more than a scintilla of objective evidence in support of causation, and, therefore, had no reasonable basis to file this claim." Resp't's Resp. at 5. Respondent noted that Petitioner's neurological complaints pre-dated her vaccination; and, Petitioner failed to provide a medical expert opinion setting forth a medical theory explaining how the flu vaccine could cause peripheral neuropathy and that it did so here. *Id.* Respondent concluded that without objective evidence that Petitioner's flu vaccination "caused her to suffer from GBS or polyneuropathy or that her condition was causally-related to her flu vaccine, [P]etitioner cannot establish that this claim ever had any feasibility. Petitioner's claim therefore lacked a reasonable basis when filed, and reasonable basis was never established." *Id.*

Petitioner argued she presented objective evidence to support a reasonable basis because she (1) received a vaccine listed on the Vaccine Injury Table, (2) the vaccine was administered in the United States, (3) Petitioner experienced residual symptoms of her injury for more than six months, and (4) Petitioner suffered an injury that is often compensated in the Program, thus satisfying the prima facie requirements for a petition under the Act. Pet'r's Reply at 3, 6 (citing § 11(c)(1); *Cottingham*, 971 F.3d at 1345–46). Petitioner relied on *James-Cornelius* for the position that a medical expert opinion is not required to satisfy a reasonable basis for attorneys' fees. *Id.* at 7 (citing 984 F.3d at 1379). Accordingly, she presented evidence of the only remaining argument—whether Petitioner's neurological complaints pre-dated her vaccination. *Id.*

After careful review of the record,[5] I find that Petitioner has satisfied the reasonable basis requirements because there is more than a scintilla of objective evidence in the record supporting a feasible claim.

---

[5] While I have reviewed all of the information filed in this case, only those filings and records that are most relevant to the decision will be discussed. *Moriarty v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though he does not explicitly reference such evidence in his decision.") (citation omitted); *see also Paterek v. Sec'y of Health & Hum. Servs.*, 527 F. App'x 875, 884 (Fed. Cir. 2013) ("Finding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered.").

While there are several medical records that indicate Petitioner had neurological complaints that pre-dated her vaccination, they are neither definitive nor consistent. *See e.g.*, Pet'r's Ex. 2 at 73 (reporting shakiness that began one year prior to vaccination); 26 (reporting similar intermittent symptoms over the last year prior to vaccination); Pet'r's Ex. 12 at 39 (reporting on November 7, 2017, that bilateral numbness and tingling of upper and lower extremities started one month ago); Pet'r's Ex. 11 at 10 (reporting on November 17, 2017, back pain and paresthesias for eight weeks); Pet'r's Ex. 25 at 6 (reporting neck pain that radiated to her arms and hands since August 2017). Moreover, several of Petitioner's providers noted a temporal association of Petitioner's flu vaccine to her subsequent neurological complaints. *See e.g.*, Pet'r's Ex. 2 at 13 (noting that seven to ten days after the flu shot, Petitioner noticed numbness of her hands); 26 (noting Petitioner's shakiness and myalgia that began five days prior to November 3, 2017); Pet'r's Ex. 12 at 48 (reporting the bilateral numbness and tingling of upper and lower extremities worsened after receiving the flu shot); Pet'r's Ex. 5 at 5 (noting complaints of muscle weakness and tingling seven days after her flu shot in October 2017); Pet'r's Ex. 22 at 7 (noting Petitioner's internal tremors began seven to ten days after receiving a flu vaccine); Pet'r's Ex. 3 at 123 (noting Petitioner began to experience tingling and internal tremors seven to ten days after she received the flu vaccine); 138 (Dr. Ingala noting Petitioner was under her care for polyneuropathy which developed within two weeks of receiving a flu shot in October 2017); 186 (noting tinging throughout Petitioner's body after a flu shot in 2017); Pet'r's Ex. 8 at 11 (noting Petitioner developed internal tremors within seven days of a flu vaccine in October 2017). Dr. Ingala even noted a potential causal association, although with no explanation. Pet'r's Ex. 3 at 125 (The impression was "small fiber polyneuropathy, like[ly] autoimmune in nature[,] [status-post] flu shot.").

The lack of definitive statements of vaccine causation made by a treating medical professional, in the absence of an expert report regarding the *Althen* prongs, undercuts the veracity of her claim, and ultimately, the claim was not successful for insufficient proof. However, a motion for fees and costs is not subject to the same standard as entitlement. Petitioner needs only to submit "more than a mere scintilla" of objective evidence in support of her claim. *James-Cornelius*, 984 F.3d at 1379. In fact, the Federal Circuit has specifically held that "[m]edical records can support causation [for reasonable basis] even where the records provide only circumstantial evidence of causation" for entitlement. *Cottingham*, 971 F.3d at 1346.

Petitioner's medical records include more than a scintilla of objective evidence that she developed neurological complaints after her flu vaccination. In accordance with the Federal Circuit's guidance in *Cottingham* and *James-Cornelius*, I find that Petitioner's claim had a reasonable basis, and she is therefore entitled to attorneys' fees and costs.

## V.   Reasonable Attorneys' Fees and Costs

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008). This is a two-step process. *Id.* First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable

hourly rate.'" *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316–18 (2008). Such applications, however, should not include hours that are "'excessive, redundant, or otherwise unnecessary.'" *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. at 895. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, n.11. Petitioners bear the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

### a. Hourly Rates

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Court has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules can be accessed online.[6]

Petitioner requests the following rates for the work of her counsel. For Mr. Paul Brazil, $375.00 per hour for work performed in 2018, $325.00 per hour for work performed in 2019, and $375.00 for work performed in 2021; for Ms. Shealene Mancuso, $275.00 per hour for work performed in 2020; and for Ms. Bridget McCullough, $250.00 per hour for work performed in 2020, $275.00 per hour for work performed in 2021; $300.00 per hour for work performed in 2022; and $350.00 per hour for work performed in 2023. Petitioner also requests rates from $125.00 per hour to $177.00 per hour for work performed by her counsel's paralegals from 2018 to 2023.

I have reviewed the billing records submitted with Petitioner's request, and I find that the hourly rates billed for 2018 through 2023 for attorney and paralegal time are all reasonable and in accord with prior awards made by other special masters.

---

[6] The OSM Fee Schedules are available at: http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch*, 2015 WL 5634323.

### b. Reasonable Number of Hours

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley*, 461 U.S. at 434). It is well-established that billing for administrative or clerical tasks is not permitted in the Vaccine Program. *See e.g.*, *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); *see also Isom v. Sec'y of Health & Hum. Servs.*, No. 94-770, 2001 WL 101459, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (agreeing with Respondent that tasks such as filing and photocopying are subsumed under overhead expenses); *Walters v. Sec'y of Health & Hum. Servs.*, No. 15-1380V, 2022 WL 1077311, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2022) (failing to award fees for the review of CM/ECF notifications and the organization of the file); *McCulloch*, 2015 WL 5634323, at *26 (noting that clerical and secretarial tasks should not be billed at all, regardless of who performs them).

Upon review of the submitted billing records, I find most of the time billed to be reasonable. However, I find a reduction necessary where paralegal Tereza Pavlacsek billed for filing documents and creating a Dropbox folder. Pet'r's Mot. at 7–8. Billing for some administrative tasks such as filing, even at a paralegal rate, is not permitted. "Clerical and secretarial tasks should not be billed at all, regardless of who performs them." *Paul v. Sec'y of Health & Hum. Servs.*, No. 19-1221V, 2023 WL 1956423, at *3 (Fed. Cl. Spec. Mstr. Feb. 13, 2023); *see also Rochester*, 18 Cl. Ct. at 387 (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"). This results in a reduction of $93.00.[7] Accordingly, Petitioner is entitled to final attorneys' fees in the amount of $19,819.80.[8]

### c. Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests $7,099.08 in costs incurred by counsel, primarily compromised of obtaining medical records, postage expenses, the filing fee, and expert fees from Dr. Daniel Menkes.[9] I have reviewed the requested costs and find them to be largely reasonable. However, Petitioner did not include receipts for the postage expenses. Therefore, a reduction of $22.97[10] is necessary. Accordingly, I will award Petitioner $7,076.11[11] in attorneys' costs.

### VI. Conclusion

---

[7] (0.20 hours x $150.00) + (0.10 hours x $150.00) + (0.30 hours x $160.00) = $93.00.

[8] $20,936.50 - $93.00 = $20,843.50

[9] Dr. Menkes billed $5,850.00 for 11.70 hours of work at a rate of $500.00 per hour. Pet'r's Mot. at 38. Dr. Menkes has previously been awarded this rate. *Edwards v. Sec'y of Health & Hum. Servs.*, No. 20-612V, 2024 WL 1740483, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 2024).

[10] $7.33 + $7.82 + $7.82 = $22.97.

[11] $7,099.08 - $22.97 = $7,076.11.

In accordance with the Vaccine Act, 42 U.S.C. §15(e) (2018), I have reviewed the billing records and costs in this case and find that Petitioner's request for fees and costs is reasonable. Based on the above analysis, I find that it is reasonable to compensate Petitioner and her counsel as follows:

| | |
|---|---|
| Attorneys' Fees Requested | $20,936.50 |
| (Reduction to Fees) | $93.00 |
| **Attorneys' Fees Awarded** | **$20,843.50** |
| | |
| Attorneys' Costs Requested | $7,099.08 |
| (Reduction of Costs) | $22.97 |
| **Attorneys' Costs Awarded** | **$7,076.11** |
| | |
| **Attorneys' Fees and Costs** | **$27,919.61** |

**Accordingly, I award a lump sum in the amount of $27,919.61, representing reimbursement for Petitioner's attorneys' fees and costs, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the above Decision.[12]

**IT IS SO ORDERED.**

s/Herbrina D. S. Young
Herbrina D. S. Young
Special Master

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.